EFILED Document
CO Park County District Court 11th JD
Filing Date: Oct 10 2009 10:14AM MDT
Filing ID: 27502856
Review Clerk: Samantha Vance

PARK COUNTY DISTRICT COURT
STATE OF COLORADO
Park County Courthouse
300 4th Street
Fairplay, CO 80440

Daniel R. Melson,
    Plaintiff,

V

Finance America, LLC d/b/a/ Fin-Am LLC
Originating Lender, Ocwen Loan Servicing, LLC,
Original Loan Servicer, Loan No. 34974212, the
CIT Group/Consumer Financing, Inc., and successor
loan servicer, Act. No. 00009800276306, Select
Portfolio Servicing , Inc. Loan No. 0008900342,
U.S. Bank NA, as trustee, on behalf of the holders of the
Trust 2006-CF-2 CS, mortgage pass-through certificates,
series 2006-CF-2, and the Public Trustee of Park County
Colorado, et al.,
    Defendants.

▲COURT USE ONLY▲

Attorney for Plaintiff:
John W. Swanson, ARN 16229
Law Office of John W. Swanson
1756 Gilpin Street
Denver, CO 80218
Tele: (303) 861-0174

Case No.:

Division:

**COMPLAINT, REQUEST TEMPORARY RESTRAINING ORDER AND INJUNCTION, REQUEST FOR DECLARATORY RELIEF AND REQUEST FOR JURY TRIAL**

Comes now plaintiff, Daniel R. Melson ("Mr. Melson"), for his Complaint and Request for Temporary Restraining Order and Injunction, and for Declaratory Relief and request for a Jury Trial.

## PARTIES

1.      Plaintiff has his primary residence at 95 Doubletree Road, Bailey Colorado 80421, with a legal description of Lot 76 Deer Creek Valley Ranchos-Unit 4, Park County, Colorado, and this is the property at issue.

2.      Defendants, US Bank NA, et al ("US Bank") are collectively the lenders and loan servicers are upon information or belief corporations doing business in Colorado on this loan and are registered to do lending business and do lending and loan servicing business in Colorado.

3.      Defendant, Public Trustee for Park County, Colorado did conduct a sale of this property on May 23, 2009 pursuant to a C.R.C.P. Rule 120 proceeding under case number 2009CV63 filed Park County District Court Colorado.

## JURISDICTION AND VENUE

4.      This Court possesses jurisdiction over this case pursuant to Article VI, Section 9 of the Colorado State Constitution because this is a civil case.

5.      This court has jurisdiction and venue is proper pursuant to C.R.C.P. Rule 98 (a) because this case affects real property situated in Park County, Colorado.

6.      This Court has jurisdiction for issuing a temporary restraining order and injunction pursuant to C.R.C.P. Rule 65 (b).

7.      Venue is proper under C.R.C.P. 98 (a) for an injunction request in this Court because the property in dispute is located in Park County Colorado. Plaintiff is seeking a permanent injunction against the foreclosure proceeding and the eviction process pending in Park County District and County Courts.

8.      Venue is further proper under C.R.C.P. 57 (a)(b)(e) for declaratory relief on plaintiff's rights in his property through his contractual rights from his deed and promissory note and any security interest in his property and in his deed he may still have.

8.      Counsel did confer by telephone pursuant to C.R.C.P. 121, 1-15 (8) on these requests for temporary restraining order, injunction and complaint, with opposing counsel and these requests will be contested.

## GENERAL ALLEGATIONS

9.      The Forcible Entry and Detainer suit ("FED") was filed on September 17, 2009 at Park County Court under case number 09C398. There is a final hearing on this case set for <u>October 14, 2009 at 2:30 P.M</u>. On that day, the Court may order immediate possession of the property be given to the bank.

Plaintiff seeks a temporary restraining order injunction to stay a prospective and eminent eviction on his property. An order authorizing the sale of the property was obtained by Defendants in the District Court for Park County, Colorado under C.R.C.P. Rule 120 under case number 2009CV63. The Defendant made a successful bid on the property on July 27, 2009. Eviction proceedings were initiated at the same time plaintiff was trying to negotiate a new loan.  Eviction was suspended for a short time to allow negotiations to continue. Then eviction was then restarted unilaterally.

8.      On March 31, 2005 Plaintiff, Grantor recorded a Deed of Trust  on May 16, 2005 at Reception No. 61468*** in the records of Park County Colorado, to secure to Mortgage Electronic Registration Systems, Inc., as nominee for Finance America. LLC, d/b/a FinAm, LLC the payment of a Promissory Note for the sum of $294,000.00. The loan was closed at Security Title Guarantee Company in Conifer, Colorado, at the request of the defendants. The first mortgage was an Adjustable Rate Mortgage ("ARM"). The deed to the property names Daniel R. Melson as record owner. The first mortgage was then sold or assigned to a number of entities. No notice of these assignments was ever given to Plaintiff. <u>Plaintiff's Affidavit Paragraph 3</u>. US Bank asserts they are the trustee of CSMC Trust 2006-CF-2. No notice of this was given to plaintiff. This is a violation of The Real Estate Protection Act ("RESPA").

9.      The loan is now serviced by Select Portfolio Servicing, Inc. ("SPS") of Salt Lake City, Utah and Aurora, Colorado. SPS provides eviction services in conjunction with or for US Bank. Plaintiff claims that US Bank is not the proper party and lacks standing to proceed. On May 28, 2008 the lenders modified the original loan under MIN No. 100052300417455481.

10.      The Uniform Residential Loan Application-Form 1003 was at some point given to plaintiff by the defendants. Plaintiff recalls it was around April 10, 2005. The completed application itself, the HUD Form 1003 is dated May 10, 2009. The signature blocks and date are blank.  The defendant telephone

interviewer Dustin Roller checked the box indicating the application was taken by phone but it is not signed or dated by him. Plaintiff signed the form on May, 20, 2005.The Form 1003 shows the following:

      a.  First mortgage $294,000.00;
      b.  Term 360 months;
      c.  Plaintiff applied for a conventional loan. He did not get one;
      d.  Interest rate 10.340;
      e.  Amortization type 30 year 2/28 ARM;
      f.  No closing costs are listed;
      g.  Loan closed on May 31, 2005.

      11.    The Good Faith Estimate ("GFE") was dated May 10, 2005. However, plaintiff received the GFE on same day as closing. The GFE states that plaintiff had applied for a first mortgage with the following:

      a. Loan amount was $294,000.00;
      b. The APR was 8.900 per cent;
      c. Monthly payment was $2,654.23;
      d. Term was 360 months;
      e. Amortizationn was an option ARM;
      f. Closing costs projected to be $4,147.00;
      g. Pre-paid and escrow are $21,266.65;
      h. Total settlement charges: $5,413.65;
      i. The finance charge is not listed.

      12.    Truth in Lending Act (TILA) Disclosure Statement is mandated in this loan. Plaintiff was provided with one standard TILA disclosure statement about 20 days before closing. He was not provided a final TILA statement at closing.

      a.  The finance charge was $661,518.94;
      b.  The total payments were $955,519.04;
      c.  The monthly payments are $2,654.23 for 359 months followed by one payment of $2.650.37.

      13.    At the time plaintiff was given the original application he was only given the 1003 form. He did not receive the Federal Reserve Bank brochure entitled *Consumer Handbook on Adjustable Rate Mortgages* then or at any other time. He did not receive the brochure entitled *A Statement of Billing Rights* any time prior to closing or anytime annually or since. He was not given a *Home Equity Brochure* or suitable substitute at any time before or since closing. Plaintiff's Affidavit Paragraph 4.

HUD-1 Statement of Settlement Charges was not provided to Plaintiff as part of the closing documents. To date 44 payments have been made on the loan for a total of $112,772.

**INTEREST CHANGE:**

14.     The maximum interest on the ARM is 14.990. The maximum interest change is 1 per cent on any change. The interest rate suddenly changed July 7, 2007 from  8.990 to 11.990, an increase of 3 per cent. Plaintiff's Affidavit Paragraph 5.

**LOAN MODIFICATION:**

15.     This loan was modified on May 27, 2008 by SPS, the current loan servicers. SPS did not own the loan at that time and it is unclear how they got authority to re-write the loan. This constitutes a re-finance. No additional disclosure notices were given to the plaintiff. Plaintiff's Affidavit Paragraph 6. The new terms were:

        a.   The principal balance of the loan was now $306,036.11;
        b.   The interest rate was increased to 9.000 per cent;
        c.   Monthly payments were increased to $2,815.93 to begin  4 days later;
        d.   The new total amount financed was left blank;
        e.   The APR was not disclosed;
        f.   The total payments were not disclosed;
        g.   The finance charge was not disclosed;
        h.   No ARM disclosures were provided.

16.     The Deed of Trust is only signed by the plaintiff. At closing on the SPS unilateral re-financing plaintiff was not provided with any notices of his right to cancel the transaction. Plaintiff's Affidavit Paragraph 7.

The Colorado Consumer Credit Code is designed to protect borrowers such as the plaintiff from predatory lending practices and to provide more information to the consumer to better allow them to make the correct and informed decisions about the loans they are contemplating. No disclosures were given to the consumer whatsoever. Plaintiff's Affidavit Paragraph 8.

17.     The Defendant and its agents failed and/or refused to make many of the disclosures required by the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq*., the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., and state law.  These violations included, but were not necessarily limited to the following**:**

A.   <u>Right of Rescission Notices</u>.      A completed Right of Rescission Forms must be given to each consumer who is entitled to rescind.  12 C.F.R. §§ 226.15(3) and 226.23.  That was not done in this case. <u>Plaintiff's Affidavit Paragraph 9</u>.

B.   <u>Rescission Disclosures</u>.      The Rescission Notice must clearly and conspicuously disclose all of the following: (a) the retention or acquisition of a security interest in the consumer's dwelling, (b) the consumer's right to rescind, (c) how to exercise that right with a form for that purpose, (d) the effects of rescission, and (e) the date the rescission period ends.  12 C.F.R. § 226.15(b)(1-5).  In this case, the notice did not correctly identify when the rescission period ends.

C.   <u>Understatement of Finance Charges</u>.      12 C.F.R. § 226.12(c) provides that all finance charges must be stated accurately and must be stated as a total dollar amount.  These charges must include all necessary or incidental costs that the consumer pays, including all third party charges and costs.  In this case, the lender stated that closing costs would be a certain amount, while actual closing costs amounted to a higher amount. <u>Plaintiff's Affidavit Paragraph 10.</u>

D.   <u>Material Disclosure Booklets Not Provided</u>.      When a loan application is given to a consumer, three booklets must be provided.  These booklets are entitled *Consumer's Handbook on Adjustable Rate Mortgages*, *Billing Rights Handbook*, and *The Home Equity Handbook*.  12 C.F.R. § 226.5b(e).  That was not done in this case.  <u>Plaintiff's Affidavit Paragraph 11.</u>

E.   <u>Disclosure of APR Was Inaccurate</u>.      The annual percentage rate for the loan must be stated accurately to within one-eighth of one percent.  12 C.F.R. § 226.14(a).  That was not done in this case.

F.   <u>Disclosure of Amount Financed Inaccurate</u>.      The amount financed must be expressed as a dollar amount and must be accurate within $100.  12 C.F.R. § 226.18(d)(1).  That was not done in this case.  Indeed, the TILA Disclosure states that the Amount Financed was just $141,161, which was far less than the actual amount on the promissory note. <u>Plaintiff's Affidavit Paragraph 12</u>.

18.   On information and belief, this mortgage loan subsequently was sold or assigned to The Bank of New York, as Trustee for CIT Home Equity Loan Trust 2003-1.  No notice was given to Mr. Melson that the loan had been sold, transferred or assigned.  <u>Plaintiff's Affidavit Paragraph 13.</u>

19.   On May 14, 2009 Mr. Melson sent a Notice of Rescission to Finance America % Ocwen Federal Bank, FSB, P.O. Box 514577, Los Angeles, CA 90051-4577 and Select Portfolio Servicing, LLC at 3815 South West Temple, Salt Lake City, UT 84115-4412.  Pursuant to theses Notices of Rescission, Mr. Melson rescinded the loan transaction at issue in this case due to the lender's violations of

their rights under Federal and Colorado law. The lender's security interest was cancelled.  <u>Plaintiff's Affidavit Paragraph 14.  Plaintiff's Exhibits A and B.</u>

20.     Mr. Melson did not receive any response to this Notice of Rescission from either party. This is an additional violation.

21.     A foreclosure sale was conducted by the Park County Public Trustees Office on the property and a successful bid was made by one of the lenders herein. Thereafter, eviction was started by defendants during re-financing negotiations.

## FIRST CLAIM FOR RELIEF (Declaratory Relief)

The allegations set forth in Paragraphs 1 through 21 of this Complaint are restated and incorporated herein by this reference.

22.     The Court has the power to declare rights and status and other legal relations pursuant to C.R.C.P. Rule 57 (a)(b)(e) and under Mr. Melson's interests in the deed and promissory note to his property. Together the deed and promissory note form a contract among the parties. The plaintiff may obtain a declaration of rights under these circumstances.

23.     Mr. Melson is an interested party under the written contracts and deed to his property and other writings constituting a contract between the parties, and whose rights are affected by these written documents. Mr. Melson sent a Rescission Notice to the lenders. This in effect cancelled the bank' security interest in the property. Mr. Melson is asking the Court to determine his and the bank's rights on this loan.

24.     Under these circumstances, the Court has authority to declare the legal rights, status, and legal relations of the parties under these written documents.

25.     Plaintiff is asking for a declaratory judgment to determine the nature and extent of the defendant's violations of Federal statutes relating to TILA, RESPA HOEPA and other state and Federal laws and statutes as described above and incorporated herein.

**WHEREFORE,** Mr. Melson requests that the Court enter a declaratory judgment establishing that:

The mortgage on his home has been rescinded in accordance with TILA and other state law, and that the Defendants were not entitled to proceed with any foreclosure sale and eviction of plaintiff from his property;

The contract, loan, mortgage and all other parts of this transaction are void ab initio and that the plaintiff is entitled to rescind this whole transaction and attendant mortgage against this property, completely and in full;

For an order pursuant to 15 U.S.C. 1635 (b) directing the defendants to terminate the security interest in plaintiff's home and property and to return all monies owed within (20) days from the date of the notice of rescission;

An order enjoining and staying  of all collection efforts, all eviction activity, any sheriff's eviction actions against plaintiff by any defendant or agent of any defendant, pending this Court's determination of questions or issues before it;

That judgment be entered against the defendants and in favor of the plaintiff for an amount equal to all closing costs and interest paid to date to the defendants by the plaintiff and for any amount of damages to be determined at trial.

And for costs, witness fees, attorney fees, expenses in bringing and prosecuting these claims, all pursuant to 15 U.S.C. Section 1640 (a)(3) and such other and further relief as may be just under the circumstances.

## SECOND CLAIM FOR RELIEF
### (Temporary Restraining Order and Injunction)

26.    The allegations set forth in Paragraphs 1 through 25 of this Complaint are restated and incorporated herein by this reference.

27.    The court may enter an temporary restraining order and injunction here irreparable harm will result unless the injunction is issued, the threatened injury outweighs the harm that the enjoining and restraining Defendants from carrying out eviction on Plaintiff's home until after he has had an opportunity to fully litigate his claims, offsets, and defenses in this case. C.R.C.P. 65 authorizes this relief.

## Temporary Restraining Order

28.    C.R.C.P. Rule  65 (b) states that a temporary restraining order may be granted without  oral notice to the adverse party or his attorney if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint or by testimony that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing or on the record the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required. Counsel gave notice to of these requests and demands to opposing counsel by a telephone discussion on October 9, 2009 and for the last two months in briefs and orally.

29.    In this case, Mr. Melson will suffer irreparable injury, loss, or damage if he is unable to obtain interim injunctive relief.  Mr. Melson's home in an eviction process with a final hearing on October 14, 2009 in Park County Court, Colorado.  The Public Trustee sale was completed at the same time the parties were negotiating for a new loan to get plaintiff back in on even terms with the bank.  Plaintiff was caught unawares of the actual sale and first realized this when eviction notices were tacked to his gatepost. Service was challenged as one notice was found in the water and mud by Mr. Melson. A second service was done and a third and the FED was commenced. If the sale is allowed to stand Mr. Melson will lose his right to this home and the unique value they attach to it.  Moreover, he will not be able to arrange alternative financing during the short period of time available under the Colorado Revised Statutes to redeem this property, and thus will not be able to redeem.  Also, Mr. Melson has legal defenses to this sale, including the defense of rescission, may be deemed to be moot if such a sale and eviction remains intact, depriving him of his day in court. All requirements for the issuance of a Temporary Restraining Order have been satisfied in this case.

**Preliminary Injunction**

30.    The Court may issue a Temporary Restraining Order or Preliminary Injunction if the moving party demonstrates (1) a reasonable probability of success on the merits, (2) a danger of real, immediate, and irreparable injury which may be prevented by injunctive relief, (3) that there is no plain, speedy and adequate remedy at law, (4) that the granting of a

preliminary injunction will not disserve the public interest, (5) that the balance of the equities favors the injunction, and (6) that the injunction will preserve the status quo pending a trial on the merits. ***Rathke v. MacFarlane***, 648 P.2d 648 (Colo.1982); ***Wakabayashi v. Tooley***, 648 P.2d 655 (Colo.1982).  Each of these elements is present in this case.

## Likelihood of Success on the Merits

31.    The first element that must be shown to obtain a preliminary injunction is a likelihood of success on the merits.  Mr. Melson is likely to prevail on the merits for three reasons.

32.    First, the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*., states that a borrower may rescind a credit transaction in which a security interest is or will be retained or acquired in any property used as the principal dwelling of the person to whom credit is extended.  *Id*. at § 1635(a).  The Colorado Consumer Credit Code, C.R.S. § 5-1-101 *et seq*., adds that a consumer shall have the same right to rescind a credit transaction of this nature under state law as under TILA.  *Id*. at § 5-5-203.

33.    The federal right of rescission may expire three years after the consummation of the loan transaction even where, as here, the lender failed to provide the disclosures required by TILA.  ***Beach v. Ocwen Federal Bank***, 523 U.S. 410, 118 S.Ct. 1408, 140 L.Ed.2d 566 (1998).  The Colorado Consumer Credit Code, however, expressly states that the consumer may raise his rights under the Code as a defense to a suit on the obligation without regard to the time limitations prescribed by the sections establishing these rights.  C.R.S. § 5-5-205.  Thus, Mr. Melson may raise the issue of rescission as a matter of defense in setoff.  *See **In re Fidler***, 226 B.R. 734, 737 (Bk.D.Mass.1998)(construing similar provision in Massachusetts Consumer Credit Cost Disclosure Act to preserve right to raise rescission as matter of defense outside three-year period).

34.    That is precisely what Mr. Melson seeks to do in this case.  It is asserted he is likely to succeed on the merits on this issue. Second, the regulations implementing TILA state that after the initiation of foreclosure on a consumer's principal dwelling, the consumer shall have the right to rescind the transaction if (1) a mortgage broker fee that should have been included in the finance charge was not included, or (2) the creditor did not provide the properly completed appropriate loan form or a substantially similar notice of rescission.  12 C.F.R. § 226.23(h).  These requirements

were not satisfied in this case. Thus, once again, Mr. Melson has a right to rescind, which he has exercised in this case.

35.     Third, Mr. Melson has asserted a number of claims for damages in this case. Even if the Court determines that Mr. Melson is not entitled to rescind the loan transaction in its entirety, they still are entitled to set off these damages against the sum owed to the lender under both Federal and State law. 15 U.S.C. § 1640(e); C.R.S. § 5-5-205. Mr. Melson further is entitled to redeem his home following any foreclosure sale that may take place. These rights will be eviscerated unless these damages are quantified prior to the foreclosure sale that took place. The lender was the successful bidder in this case the Public Trustee may have been unable to calculate the amount that Mr. Melson must pay to redeem the property in the absence of such liquidation. The Court therefore should issue a preliminary injunction in this matter to forestall further execution of this sale.

## Irreparable Injury and Harm

36.     The second factor that must be shown to obtain a temporary restraining order or preliminary injunction is a danger of real, immediate and irreparable injury which may be prevented by injunctive relief. This danger is present and taking place. If the foreclosure sale is allowed to stand Mr. Melson will lose his home and the unique value he ascribes to it, and his right of rescission will be eviscerated. The eviction order will probably issue on October 14, 2009 in spite of any objection by plaintiff will put plaintiff and his family in turmoil and extreme stress. He has over $300,000.00 dollars of heavy machine tools and car body molds he uses in his business on the property. Plaintiff's Affidavit Paragraph 15. Moving this equipment out and finding suitable storage is costly and will disrupt his business. He will lose money and potentially customers. He will have to move all his personal belongings and at present has no place to go. These losses cannot be compensated completely by money damages. A danger of real, immediate, and irreparable injury which may be prevented by injunctive relief is present in this case.

## No Plain, Speedy and Adequate Remedy at Law

37.    The third factor that must be shown to obtain a temporary restraining order or preliminary injunction is that there is no plain, speedy, and adequate remedy at law.  This factor is present for the reasons set forth above.

## The Public Interest

38.    The fourth factor that must be shown to obtain a temporary restraining order or preliminary injunction is that the granting of the injunction will not disserve the public interest.  There plainly is a strong public interest in enabling families to assert all rights they may have to protect their homes, especially in these troubled economic times.  There were bank bailouts, but no help for the homeowner in a way to get re-financing to allow them to survive in their homes. Eviction is a drastic remedy that will lead to more disruption in plaintiff's life and may cause him to lose his business. He will be ruined and at the least have to start over in his community. That cannot serve the public interest. The requested preliminary injunction will not disserve the public interest.

## The Balance of the Equities

39.    The fifth factor that must be shown to obtain a temporary restraining order or preliminary injunction is that the balance of the equities favors the injunction.  In this case, Mr. Melson faces a potentially grievous loss if the foreclosure sale of their home is allowed stand and eviction takes place.  At the same time, the lender will be only mildly inconvenienced if this sale is enjoined pending a full trial on the merits.  If the Court determines that the lender is entitled to proceed with the eviction the lender will have been delayed in exercising this right for only a short period of time.  Moreover, the lender's interest in the property will remain fully secured during the interim.  Mr. Melson tried to get alternate financing. He was trying to complete a new loan with the defendants when eviction was initiated by defendants. The balance of the equities strongly favors the granting of the requested injunction.

## Maintenance of the Status Quo

40.    The sixth, and final, factor that must be shown to obtain a temporary restraining order preliminary injunction is that the requested injunction will maintain the status quo.  That is precisely what will happen in this case if a preliminary injunction is granted.  The bank cannot sell this property in the near future as homes in plaintiff's area are not selling. The bank may want to make some sort of insurance claim on the property rather than carrying a non producing asset on the books.  In either case they will not be prejudiced by this request. As a result, this factor also favors the granting of a preliminary injunction.

**No Additional Security Should Be Required in This Case**

41.    C.R.C.P. 65(c) states that no restraining order or preliminary injunction shall issue except upon the giving of security by the applicant. The amount of security required by this rule lies within the Court's sound discretion.  ***Apache Village, Inc. v. Coleman Co.***, 776 P.2d 1154 (Colo.App.1989).  In this case, the lender's rights are fully secured by the existing security interest in Mr. Melson's property and home, which will remain in place pending resolution of the case.  Thus, no additional security is required to protect its interests.

42.    In this case, Mr. Melson is entitled under Federal and state law the right to rescind the mortgage on his home, and he has sent proper notice of rescission to predecessor lenders or servicers.

43.    Defendant therefore is required to, among other things, withdraw the deed of trust filed on Mr. Melson's home, take no action to further attempt to forcibly evict and continue the foreclosure sale or otherwise transfer the title to this property to anyone, and withdraw any negative reports it may have submitted to credit reporting agencies with regard to this loan transaction.

44.    Irreparable harm will result to Mr. Melson unless an injunction is issued, in that the defendants will continue the eviction process or conduct further sale of Mr. Melson's home unless they are enjoined and restrained from doing so.

45.    The threatened injury to Mr. Melson, the forcible loss of his home and potential loss of his personal and business equipment and large fixed

machinery and unique car molds worth over $300,000.00 greatly outweighs any harm that an injunction may cause to the Defendants in this case.  If an injunction is not granted, Mr. Melson will lose his home.  Plaintiff in an effort to mitigate his damages twice contacted Defendant to work out an agreement to set aside enough time to vacate and a reasonable time to move his property off the land. These requests were ignored. Instead, another eviction notice was posted on the property. Defendant agents from SPS the servicing company twice contacted the Plaintiff ex parte to "talk about his moving". After a period of negotiation the SPS representative told Plaintiff the bank was not interested in giving Mr. Melson a re-financing plan.  The next day the first notice for immediate possession was posted on Mr. Melson's gate post. <u>Plaintiff's Affidavit Paragraph 15</u>.

46.     On the other side of the equation, the defendants will suffer no harm if they are enjoined from eviction or selling or attempting to sell the home. Defendant had no right to foreclose on this property due to the rescission of the loan transaction. They have no right to evict plaintiff. The Public Trustee has no interest in this matter other than to properly carry out the laws and purpose entrusted for its administration of the sale, and therefore, will suffer no injury if an injunction is granted. The sale should have not been held because the loan was rescinded.

47.     Finally, the temporary restraining order or injunction, if issued, will not adversely impact the public interest.  There is no public interest in allowing lenders to foreclose upon properties and homeowners when the loan transaction has been rescinded.  There is no public policy served by foreclose on loans that are impossible to pay in the economic climate. There are millions of homes currently in foreclosure at this time. The banks received a federal bailout and upon information or belief the banks were to help homeowner's stay in their homes. There is a strong public interest in enabling families to stay in their homes and survive the economic conditions that prevail in our society.  The requested temporary restraining order or injunction will help to advance this public interest.

**WHEREFORE:** Mr. Melson requests that the Court issue a Temporary Restraining Order or Preliminary and Permanent Injunction enjoining and restraining the Defendants from evicting Mr. Melson from his home or selling or attempting to sell Mr. Melson's home, and further mandating that Defendant withdraw all negative credit reports made with respect to this transaction, and take all other actions required under TILA and state law following the rescission of a loan transaction. Plaintiff seeks an award of damages and costs, including but not limited to witness and expert witness fees, reasonable attorney fees and costs, and such other and further relief as may be just under the circumstances.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract)

48.     The allegations set forth in Paragraphs 1 through 47 of this Complaint are restated and incorporated herein by this reference.

49.     The defendants have a duty of to deal fairly with plaintiff under the terms of the promissory note and deed in this case. The agreements of the parties make a contract for performance of the parties. Plaintiff performed well until last year when his automotive business fell through the floor due to the economic downturns faced by the United States. There is a prediction that millions of foreclosures are to come in the next few years. Unemployment is almost 10 per cent. and there are millions now in foreclosure. This comes in part from the mortgage backed securities scandal that brought this economy to its knees and did drive millions of families out of their jobs and their homes. The bank and the homeowner are in these mortgages together. The homeowner has a home and the bank makes hundreds of thousands of dollars on each and every home loan. Now that there are the most severe economic times since the depression, it is only the bank that appears safe.  The bank and insurance bailout ensued. But no real help for the beleaguered homeowner has arrived.

50.     The banks and defendants in this case have breached this duty by forging ahead with a foreclosure and brushing off all plaintiff's attempts to get a re-financing scheme going. They pretended they were interested in re-financing but never followed through with any help. One day plaintiff was told that the bank "was not interested in giving him refinancing" and the next day started the eviction. This was at least deceptive and may have been an intentional breach of contract and breach of fair dealing or misrepresentation.

51. The defendants breached their duty of fair dealing and duties under this contract by multiple failures to give plaintiff proper notices pursuant to Federal and state rules and regulation as outlined above.

52.     All these breaches caused damages to plaintiff more fully described below.

53.     Mr. Melson suffered actual damages due to the failure of defendant, and its predecessors and agents in interest to properly disclose finance charges associated with the loan transaction, the imposition of closing costs and fees in connection with this improper loan transaction, and otherwise.

54.     TILA and state law further provide for the recovery of statutory damages for the violation of the disclosure requirements set forth therein, as well as for the failure to respond to a lawful notice of rescission.

55.     The defendant has a duty of fair dealing to the plaintiff in all parts of the loan process and through any Court proceedings. The SPS representatives fell below that standard in the eviction process. They breached their duty to plaintiff by engaging in the following activities. Opposing Counsel referred my client to an SPS agent who had the "Apparent authority to make a new loan." Communications ensued but were unproductive. The agent informed me that the defendant was not interested in giving plaintiff a new loan. The very next day the eviction notice was posted. She said the bank was not interested in re-financing the plaintiff's loan. This was after several calls to her and two letters seeking re-financing of the home.

56.     The day before the SPS representative unilaterally cancelled the re-finance project, a man identified as working for defendant SPS contacted plaintiff ex parte to see if he could "Help plaintiff move."   Counsel complained about this to defendant's attorney and was assured there would be no further ex parte conduct. Then another ex parte contact was made by a SPS staff asking if plaintiff was 'ready to move'. Counsel complained about this and was told the woman who contacted plaintiff did not work for the defendant.  The woman told plaintiff she worked for defendant SPS. This is a breach of defendant's duty of fair dealing duty to not contact represented parties, ex parte. <u>Plaintiff's Affidavit Paragraph 16.</u>

57.     Plaintiff's damages may be set off against any amounts owed to the defendants regardless of the length of time between the closing of the loan transaction and this filing in court.

**WHEREFORE:** Mr. Melson requests an award of damages in his favor and against Defendants for an amount determined at trial or by the Court, and an Order setting off any damages awarded to plaintiff against any sum owed and proven by the Defendant, together with an award of costs, including but not limited to witness and expert witness fees, attorney fees and costs, and such other and further relief as may be just under the circumstances.

Plaintiff respectfully requests a jury trial.

Respectfully submitted this 10th Day of October, 2009

**Law Office of John W. Swanson**

*/s/ John W. Swanson*
_____

John W. Swanson

Attorney for Plaintiff Daniel R. Melson

# NOTICE OF LOAN RESCISSION

EFILED Document
Park County District Court 11th JD
Filing Date: Oct 10 2009 10:14AM MDT
Filing ID: 27502856
Review Clerk: Samantha Vigdor

**TO:   FINANCE AMERICA, LLC.**
**C/O OCWEN FEDERAL BANK, FSB**
**SELECT PORTFOLIO SERVICING, LLC**
**And To Whom Else It May Concern:**

**FROM:  DANIEL R. MELSON**

     **PLEASE TAKE NOTICE that pursuant to the provisions of 12 CFR 226.23,
the Truth In Lending Act (the "Act"); the Colorado Consumer Credit Code (CRS 5-
3-103, 403); The Real Estate Settlement Procedures Act and/or the Home Owner's
Equity Protection Act (HOEPA) that the undersigned homeowner(s) hereby terminates,
cancels and rescinds that** certain **Loan No. 34974212** ("loan") together with the Contract,
Note, Deed of Trust, Security Interest and the entire transaction associated therewith
dated on or about 5/27/08, against:

           **Finance America, LLC d/b/a/ Fin-Am, LLC**
            **C/O Ocwen Federal Bank, FSB**
              **P.O. Box 514577**
            **Los Angeles, CA 90051-4577**
 **And any assignees, successors in interest, purchasers trustees, or other such parties
who have or may have an interest or claimed interest therein (hereinafter
"Lender");**

Homeowner further intends to invoke the provisions of the Act as they relate to
injunctive, statutory and other relief against the Lender as provided therein.

The real property that is the subject matter of this transaction is as follows:
           attached
Also known and numbered as:**95 Doubletree Rd.  Bailey, CO 80421**

DONE THIS  14th DAY OF  May, 2009

**Homeowner(s):**
I/WE WISH TO CANCEL

    /s/ *Dan Melso*
      Daniel R. Melson

12CFR 226.23 states that when a consumer rescinds, the security interest becomes void. Within 20 days of receipt of this Notice, the
above named creditor(s) must take action required to cancel the security interest in the above real property and reflect that cancellation
on the public records; and return any monies paid by the homeowner(s) to anyone in connection with the transaction to date.  Failure
to respond as required within the time required results in yet another violation and incurs additional statutory damages of up to $2,000.

PLAINTIFF'S EXHIBIT A

## CERTIFICATE OF MAILING

I, the undersigned do hereby certify that I have served the within Notice of Intent To Rescind upon the named recipient lender(s) as set forth thereon by mailing a the original thereof to the address set forth thereon by placing same in the US Mails with sufficient postage attached.

Copies were also mailed as follows:

Date: _____, 2009

Signed:

_____

## CERTIFICATE OF SERVICE

I, THE UNDERSIGNED do hereby certify that I have served a true and correct copy of the above entitled **Notice of Intent to Rescind** upon the named party by handing to and leaving with the following:

Name: _____

At the following address:
    Street:_____

    City _____   State_____

Date and time of service:
    Date:_____, 2008  at _____ o'clock ___am ___pm

Signature

_____

# NOTICE OF LOAN RESCISSION

**TO:**   **FINANCE AMERICA, LLC.**        **Date: May 14, 2009**
      **C/O OCWEN FEDERAL BANK, FSB**
      **SELECT PORTFOLIO SERVICING, LLC**
      **And To Whom Else It May Concern:**

**FROM: DANIEL R. MELSON**

     **PLEASE TAKE NOTICE that pursuant to the provisions of 12 CFR 226.23, the Truth In Lending Act (the "Act"); the Colorado Consumer Credit Code (CRS 5-3-103, 403); The Real Estate Settlement Procedures Act and/or the Home Owner's Equity Protection Act (HOEPA) that** the undersigned homeowner(s) hereby terminates, cancels and rescinds that certain **Loan No. 0008900342** ("loan") together with the Contract, Note, Deed of Trust, Security Interest and the entire transaction associated therewith dated on or about 5/27/08 against:

**Select Portfolio Servicing, LLC**
**3815 South West Temple**
**Salt Lake city, UT 84115-4412**

**And any assignees, successors in interest, purchasers trustees, or other such parties who have or may have an interest or claimed interest therein (hereinafter "Lender");**

Homeowner further intends to invoke the provisions of the Act as they relate to injunctive, statutory and other relief against the Lender as provided therein.

The real property that is the subject matter of this transaction is as follows:
     attached
Also known and numbered as:**95 Doubletree Rd. Bailey, CO 80421**

DONE THIS 14th DAY OF MAY, 2009

**Homeowner(s):**
I/WE WISH TO CANCEL

_____/S/ Daniel Melson_____
Daniel R. Melson

12CFR 226.23 states that when a consumer rescinds, the security interest becomes void. Within 20 days of receipt of this Notice, the above named creditor(s) must take action required to cancel the security interest in the above real property and reflect that cancellation on the public records; and return any monies paid by the homeowner(s) to anyone in connection with the transaction to date. Failure to respond as required within the time required results in yet another violation and incurs additional statutory damages of up to $2,000.

Plaintiff's Exhibit B

## CERTIFICATE OF MAILING

I, the undersigned do hereby certify that I have served the within Notice of Intent To Rescind upon the named recipient lender(s) as set forth thereon by mailing a the original thereof to the address set forth thereon by placing same in the US Mails with sufficient postage attached.

Copies were also mailed as follows:

Date: _____, 2008

Signed:

_____

## CERTIFICATE OF SERVICE

I, THE UNDERSIGNED do hereby certify that I have served a true and correct copy of the above entitled **Notice of Intent to Rescind** upon the named party by handing to and leaving with the following:

Name: _____

At the following address:
Street: _____

City _____ State_____

Date and time of service:
Date:_____, 2008  at  _____ o'clock ____am ____pm

Signature

_____

<table>
<tr><td>

PARK COUNTY DISTRICT COURT
State of Colorado
Park County Court House
300 4th Street
Fairplay, CO 80440

</td><td>

EFILED Document
CO Park County District Court 11th JD
Filing Date: Oct 10 2009 10:14AM MDT
Filing ID: 27502856
Review Clerk: Samantha Vance

</td></tr>
</table>

| | |
|---|---|
| Plaintiff:<br><br>DANIEL R. MELSON,<br><br>Defendants:<br><br>Finance America, LLC d/b/a/ Ocwen Loan Servicing, LLC-Original Lender, Ocwen Loan Servicing, LLC-Original loan Servicer, Loan No. 34974212, The CIT Group/Consumer Financing, Inc., and successor Loan Servicer, Act. No. 00009800276306, Select Portfolio Servicing, Inc., Loan No. 0008900342, US Bank NA, as trustee, on behalf of the holders of the Trust 2006-CF-2 CS, mortgage pass through certificates, series 2006-CF-2, and the Public Trustee of Park County Colorado. | ▲COURT USE ONLY▲ |
| Attorneys for Plaintiffs:<br>John W. Swanson ARN 16229<br>Law Office of John W. Swanson<br>1756 Gilpin Street<br>Denver, CO 80218<br>Telephone: 303.861.0174 | Case No.:<br><br>Division: |
| **AFIDAVIT OF PLAINTIFF DANIEL R. MELSON** | |

1.      I, Daniel R. Melson, swear, affirm and declare that I have personal knowledge of the facts set forth in this affidavit.  If called as a witness, I would testify to these facts under oath.

2.     I am the plaintiff in the above-captioned case.   I personally participated in the purchase, financing, and re-financing of this property, and am familiar with each of these transactions in general terms.

3.  I received no notice of any transfer of a security interest in this loan;

4.  I did not receive the (3) Consumer Handbooks;

5.  I did not know the interest rate had changed;

6.  I did not know SPS was going to re-write my loan;

7.  I did not get a notice of my right to cancel the SPS loan;

8.  I did not get the predatory Lending discloser;

9.  I did not get a Right of Rescission form;

10. I was not informed of the incorrect closing costs;

11. I did not receive the Material Disclosure Booklets;

12. I did not know the amount financed had changed;

13. I got no notice the loan was sold to any other bank;

14. I caused the Rescission Notices to be sent to the lenders;

15. I will be harmed financially and personally if I am evicted. My personal and business life is in turmoil. I have business equipment and heavy tools and machinery I use in my automotive restoration and auto repair business. This equipment is located on the property. There are sports car body molds worth over $300,000.00 I have moved some of my property to temporary storage. There is presently no place to move the rest. I will suffer a permanent business loss of undetermined amount in the eviction.

If I am forced out of my home and off my land I will lose a great deal of important business in my car restoration business. I asked my attorney to try to work out a reasonable time plan to get my property off the land and in a safe place. These requests were ignored by the defendant's. Eviction was restarted the same day the second request for time was

made. I feel the bank retaliated against me because I complained about their ex parte communications and for having asked for reasonable time.

16. I had (2-3) ex parte conversations with agents from SPS. They wanted to see if they could help me move. One was before the eviction notice. This caused me great embarrassment because my neighbors asked what those people were doing posting a total of six individual notices on my gate.

FURTHER AFFIANT SAYETH NAUGHT.

## Verification

STATE OF COLORADO )
)            ss.
)
COUNTY OF _____

    I, Daniel R. Melson, being first duly sworn and upon oath, state that I have read the foregoing Affidavit, know the contents thereof, and that the statements set forth therein are true and correct to the best of my knowledge and belief.


*/s/*
_____
Daniel R. Melson


Subscribed and sworn to before me this ____ day of September, 2009


*/s/*
_____
Notary Public/Clerk of the Court


My commission expires: _____

EFILED Document
CO Park County District Court 11th JD
Filing Date: Oct 10 2009 10:14AM MDT
Filing ID: 27502856
Review Clerk: Samantha Vance

| | |
|---|---|
| PARK COUNTY DISTRICT COURT<br>State of Colorado<br>Park County Court House<br>300 4th Street<br>Fairplay, CO 80440 | |
| Plaintiff:<br><br>DANIEL R. MELSON,<br><br>Defendants:<br><br>Finance America, LLC d/b/a/ Ocwen Loan Servicing, LLC-Original Lender, Ocwen Loan Servicing, LLC-Original Loan Servicer, Loan No. 34974212, The CIT Group/Consumer Financing, Inc., and successor Loan Servicer, Act. No. 00009800276306, Select Portfolio Servicing, Inc., Loan No. 0008900342, US Bank NA, as trustee, on behalf of the holders of the Trust 2006-CF-2 CS, mortgage pass through certificates, series 2006-CF-2, and the Public Trustee of Park County Colorado. | ▲COURT USE ONLY▲ |
| Attorneys for Plaintiffs:<br>John W. Swanson ARN 16229<br>Law Office of John W. Swanson<br>1756 Gilpin Street<br>Denver, CO 80218<br>Telephone: 303.861.0174 | Case No.:<br><br>Division: |

## AFIDAVIT OF PLAINTIFF DANIEL R. MELSON

    1.    I, Daniel R. Melson, swear, affirm and declare that I have personal knowledge of the facts set forth in this affidavit. If called as a witness, I would testify to these facts under oath.

2.    I am the plaintiff in the above-captioned case.   I personally participated in the purchase, financing, and re-financing of this property, and am familiar with each of these transactions in general terms.

3. I received no notice of any transfer of a security interest in this loan;

4. I did not receive the (3) Consumer Handbooks;

5. I did not know the interest rate had changed;

6. I did not know SPS was going to re-write my loan;

7. I did not get a notice of my right to cancel the SPS loan;

8. I did not get the Predatory Lending discloser;

9. I did not get a Right of Rescission form;

10. I was not informed of the incorrect closing costs;

11. I did not receive the Material Disclosure Booklets;

12. I did not know the amount financed had changed;

13. I got no notice the loan was sold to any other bank;

14. I caused the Rescission Notices to be sent to the lenders;

15. I will be harmed financially and personally if I am evicted. My personal and business life is in turmoil. I have business equipment and heavy tools and machinery I use in my automotive restoration and auto repair business. This equipment is located on the property. There are sports car body molds worth over $300,000.00 I have moved some of my property to temporary storage. There is presently no place to move the rest. I will suffer a permanent business loss of undetermined amount in the eviction.

If I am forced out of my home and off my land I will lose a great deal of important business in my car restoration business. I asked my attorney to try to work out a reasonable time plan to get my property off the land and in a safe place. These requests were ignored by the defendant's. Eviction was restarted the same day the second request for time was

made. I feel the bank retaliated against me because I complained about their ex parte communications and for having asked for reasonable time to move my equipment and possessions.

16. I had (2-3) ex parte conversations with agents from SPS. They wanted to see if they could help me move. One was before the eviction notice. This caused me great embarrassment because my neighbors asked what those people were doing posting a total of six individual notices on my gate.

**Further Affiant Dan Melson Says Not:**

### Verification

STATE OF COLORADO      )
                                 )    ss.
COUNTY OF _Denver_      )

I, Daniel R. Melson, being first duly sworn and upon oath, state that I have read the foregoing Affidavit, know the contents thereof, and that the statements set forth therein are true and correct to the best of my knowledge and belief.

/s/

Daniel R. Melson

Subscribed and sworn to before me this _8th_ day of ~~September,~~ _October_ 2009

/s/ Kimberly Duran

Notary Public/Clerk of the Court

My commission expires: _____

My Commission Expires
03/14/2012

3