| | |
|---|---|
| PARK COUNTY DISTRICT COURT<br>STATE OF COLORADO<br>300 4th Street<br>Fairplay, CO 80440<br><br>**Plaintiff:**<br><br>DANIEL R. MELSON<br><br>**Defendants:**<br><br>Finance America, LLC d/b/a/ FinAm. LLC Originating Lender, Ocwen Loan Servicing, LLC-Original Loan Servicer, Loan No. 34974212, The CIT Group/Consumer Financing, Inc., and successor Loan Servicer, Act. No. 00009800276306, Select Portfolio Servicing, Inc. Loan No. 0008900342, U.S. Bank NA, as trustee, on behalf of the holders of the Trust 2006-CF-2 CS, mortgage pass-through certificates,  2006-CF-2, Mortgage Electronic Registration System, Inc. MERS/MIN No. 100052300417455481, and the Public Trustee of Park County Colorado. | ▲ COURT USE ONLY ▲ |
| Attorney for Plaintiff:<br>John W. Swanson, ARN 16229<br>**Law Office of John W. Swanson**<br>1767 Denver West Blvd, Ste. A<br>Golden, CO 80401<br>(720) 300-8328- Telephone | Case No.: **2009CV286**<br><br>Division: B |
| **AMENDED COMPLAINT AND REQUEST FOR DECLARATORY RELIEF, REQUEST FOR A PERMANENT INJUNCTION AND DAMAGES** | |

Comes now, Plaintiff, Daniel R. Melson ("Mr. Melson"), for his Amended Complaint and Request for Declaratory Relief, Permanent Injunction and Damages against the Defendants.

## PARTIES

1. Plaintiff had his primary residence at 95 Doubletree Road, Bailey Colorado 80421, with a legal description of Lot 76 Deer Creek Valley Ranchos- Unit 4, County of Park, and State of Colorado. He was evicted.

2. Defendant, US Bank NA, et al ("Lenders"). The lenders, servicers and investors are upon information or belief are corporations doing business on this loan and are registered to do business and do lending business in Colorado.

3. Defendant, Public Trustee for Park County, Colorado did conduct a sale of this property and an eviction took place after a trial to the Court.

4. Mortgage Electronic Registration Systems, Inc. ("MERS") is no longer registered in Colorado, is an out of state corporation doing business in Colorado. business in Colorado. It did business in Colorado on this loan under MERS/MIN No. 100052300417455481. MERS bought an interest in the deed and allegedly bought and sold Mr. Melson's property on the open market without notice to Mr. Melson or the Public Trustee.

5.Select Portfolio Services, Inc. ("SPS") SPS somehow got an interest in the deed and accepted refinancing documents under the pretense of helping Plaintiff remain in his home, while simultaneously successfully planning and carrying out an eviction of Plaintiff.

## JURISDICTION AND VENUE

6.     This Court possesses jurisdiction over this case pursuant to Article VI, Section 9 of the Colorado State Constitution because this is a civil case.

7.     Venue is proper in State District Court under C.R.C.P. 98(a), 57(a)(b)(c) because this case affects real property situated in Park County, Colorado.

8.     Venue further is proper in State District Court under C.R.C.P. 98(d) because Plaintiff seeks an injunction to stay a prospective transfer of the property. An order authorizing the sale of the property was obtained by Defendants in the

District Court for Park County, Colorado under C.R.C.P. Rule 120 under case number 2009CV63. The Defendant made a successful bid on the property on July 27, 2009. Eviction proceedings were initiated while the parties were negotiating for refinancing on the property. Eviction was suspended for a short time to allow negotiations to continue. Then eviction was suddenly restarted without notice, the next day.

## GENERAL ALLEGATIONS

9.      On March 31, 2005 Plaintiff, Grantor, recorded a Deed of trust, which was recorded on June 16, 2005 at Reception No. 61468*** in the records of Park County Colorado, to secure to Mortgage Electronic Registration Systems, Inc., as nominee for Finance America. LLC, d/b/a FinAm, LLC the payment of a Promissory Note for the sum of $294,000.00.

10.      The loan was closed at Security Title Guarantee Company in Conifer, Colorado at the request of the defendants. The first mortgage was an Adjustable Rate Mortgage ("ARM"). The deed to the property names Daniel R. Melson as record owner. The first mortgage was then sold or assigned to a number of entities. No notice of these assignments was ever given to Plaintiff. US Bank asserts they are the trustee of CSMC Trust 2006-CF-2. No notice of this was given to plaintiff.

11.      This is a violation of Real Estate Settlement Procedures Act ("RESPA"). The loan appears to be owned by SPS but they cannot take transfer from MERS because MERS split the note and deed. Select Portfolio Servicing, Inc. ("SPS") of Salt Lake City is the alleged note holder, but not a real party in interest, but likely the alleged eviction arm of the other lenders.  Plaintiff contends that US Bank is not a real party in interest on the property and lacks standing to proceed.

12.      The Good Faith Estimate ("GFE") was dated May 10, 2005. However plaintiff received the GFE on same day as closing the GFE states that plaintiff had applied for a first mortgage with the following terms:

a. Loan amount was $294,000.00;
b. The APR was 8.900 per cent;
c. Monthly payment was $2,654.23;
d. Term 360;
e. Amortizationn was an option ARM;
f. Closing costs projected to be $4,147.00;
g. Pre-paid and escrow are $21,266.65;
h. Total settlement charges: $5,413.65;

i. The finance charge is not listed.


13. The Truth in Lending Act ("TILA") requires Disclosure Statements.  Plaintiff was not provided a final TILA statement at closing.

      a.  The finance charge was $661,518.94;

      b.  The total payments were $955,519.04;

      c.  The monthly payments are $2,654.23 for 359 months followed by one payment of $2.650.37.

14.    At the time plaintiff was given the original loan application he was only given the 1003 Form. He did not receive the Federal Reserve Bank brochure entitled *Consumer Handbook on Adjustable Rate Mortgages* then or at any other time. He did not receive the brochure entitled *A Statement of Billing Rights* any time prior to closing or anytime annually or since. He was not given a *Home Equity Brochure* or suitable substitute at any time before or since closing.

15.    To date 44 payments have been made on the loan. For a total of $112,772.

16.    Interest Change: The maximum interest on the ARM is 14.990. The maximum interest change is 1 per cent on any change. The interest rate suddenly changed July, 7, 2007 from 8.990 to 11.990, an increase of 3 per cent.

17.    Loan Modification:  This loan was modified on May 27, 2008 by SPS, the current servicer. SPS did not own the loan at that time and it is unclear how they got authority to re-write the loan. Or whether this transfer of ownership was recorded with the public Trustee. This constitutes a refinance. No additional disclosure notices were given to the plaintiff.

18.    The Deed of Trust is only signed by the plaintiff. At closing on the SPS unilateral refinancing, plaintiff was not provided with any notices of his right to cancel the transaction.

19.    The Colorado Consumer Credit Code is designed to protect borrowers such as the plaintiff from predatory lending practices and to provide more information to the consumer to better allow them to make the correct and informed decisions about the loans they are contemplating. No disclosures were given to the Plaintiff, whatsoever.

20.    The Defendant and its agents failed and/or refused to make many of the disclosures required by RESPA, 12 U.S.C. § 2601 *et seq.*, TILA, 15 U.S.C. § 1601

*et seq.*, and state law.  These violations included, but were not necessarily limited to, the following**:**

      A.    <u>Right of Rescission Notices</u>.  A completed Right of Rescission Form must be given to each consumer who is entitled to rescind. 12 C.F.R. §§ 226.15(3) and 226.23.  That was not done in this case.

      B.    <u>Rescission Disclosures</u>.    The Rescission Notice must clearly and conspicuously disclose all of the following: (a) the retention or acquisition of a security interest in the consumer's dwelling, (b) the consumer's right to rescind, (c) how to exercise that right with a form for that purpose, (d) the effects of rescission, and (e) the date the rescission period ends.  12 C.F.R. § 226.15(b)(1-5).  In this case, the Notice did not correctly identify when the rescission period ends.

      C.    <u>Understatement of Finance Charges</u>.    Under 12 C.F.R. § 226.12(c), all finance charges must be stated accurately and must be stated as a total dollar amount.  These charges must include all necessary or incidental costs that the consumer pays, including all third party charges and costs.  In this case, the lender stated that closing costs would be a certain amount while actual closing costs amounted to higher amount. This was a unilateral change.

      D.    <u>Material Disclosure Booklets Not Provided</u>.    When a loan application is given to a consumer, three booklets must be provided. These booklets are entitled *Consumer's Handbook on Adjustable Rate Mortgages*, *Billing Rights Handbook*, and *The Home Equity Handbook*.  12 C.F.R. § 226.5b(e).  That was not done in this case.

      E.    <u>Disclosure of APR was Inaccurate</u>.    The annual percentage rate for the loan must be stated accurately to within one-eighth of one percent.  12 C.F.R. § 226.14(a).  That was not done in this case.

      F.    <u>Disclosure of Amount Financed Inaccurate</u>.  The amount financed must be expressed as a dollar amount and must be accurate within $100.  12 C.F.R. § 226.18(d)(1).  That was not done in this case.

    21.    On information and belief, this mortgage loan subsequently was sold or assigned to The Bank of New York, as Trustee for CIT Home Equity Loan Trust 2003-1.  No notice was given to Mr. Melson that the loan had been sold, transferred, or assigned to anyone.

22.     Mr. Melson caused to be sent a Notice of Rescission to the lenders. Pursuant to this Notice of Rescission, Mr. Melson rescinded the loan transaction at issue in this case due to the lender's violations of his rights under TILA and Colorado law

23.     Mr. Melson did not receive any response to this Notice of Rescission. This is an additional violation.

## FIRST CLAIM FOR RELIEF
### (Declaratory Relief)

24.     C.R.C.P. 57(a)(b)(c) for a declaration of rights for Plaintiff's interest in land and for a contract or written contract.

25. The allegations set forth in previous paragraphs of this Complaint are restated and incorporated herein by this reference.

26.     Mr. Melson is an interested party under the written contracts and other writings constituting a contract between the parties, and whose rights are affected by these written documents and actions of the parties. He has an interest in his land a return to him.

27.     Under these circumstances, the Court has authority to declare the rights, status, and legal relations of the parties under these written documents.

**WHEREFORE,** Mr. Melson requests that the Court enter a declaratory judgment establishing that the mortgage on their home has been rescinded in accordance with TILA and state law and the MERS involvement, and that the Defendants were not entitled to proceed with any foreclosure sale of this property and the eviction or any further transfer of the property; together with an award of reasonable attorney fees and costs, including but not limited to witness and expert witness fees, attorney fees and costs, and such other and further relief as may be just under the circumstances.

## SECOND CLAIM FOR RELIEF
### (Injunction)

28.     C.R.C.P. 65(a)(b). The allegations set forth in all previous paragraphs 1 through 16 of this Complaint are restated and incorporated herein by this reference.

29. The court may enter an injunction where irreparable harm will result unless the injunction is issued.

30.     Opposing Counsel was contacted and conferred with about the filing of a Temporary Restraining Order and Injunction. The TRO was denied. They had objected to both the TRO and Injunction

31.     The threatened injury outweighs the harm that the injunction may cause to the opposing party,

32.     Finally, the injunction, if issued, will not adversely impact the public interest.  There is no public interest in allowing lenders to foreclose upon properties when the loan transaction has been rescinded.  There is a strong public interest in enabling families to stay in their homes.  The requested injunction will help to advance this public interest.

33.     This loan deed was sold or assigned at some point without the required notice to Mr. Melson and the Public Trustee. Mortgage Electronic Registrations Systems, Inc. got a hold of the deed and assigned it a MERS/Min No. which means they split the deed form the note and bundled this loan and traded it on the open market for an attempt at profit. The splitting of the deed make it impossible for any defendant her to foreclose or evict.

34.     In this case, Mr. Melson is entitled under Federal and state law the right to rescind the mortgage on his home, and he has sent proper notice of rescission to Defendant, US Bank and SPS and others.

35.     Defendant therefore is required to, among other things, withdraw the deed of trust filed on Mr. Melson's home, take no action to attempt evict and continue the foreclosure sale or otherwise transfer the title to this property to anyone, and withdraw any negative reports it may have submitted to credit reporting agencies with regard to this loan transaction.

36.     Irreparable harm will result to Mr. Melson unless an injunction is issued, in that the defendants will continue the eviction process or conduct further sale of Mr. Melson's home unless they are enjoined and restrained from doing so.

37.     The threatened injury to Mr. Melson, the loss of his home and potential loss of his personal and business equipment and large fixed machinery and unique car molds worth over $300,000.00 greatly outweighs any harm that an injunction may cause to the Defendants in this case.  If an injunction is not granted, Mr. Melson will lose his home.

### THIRD CLAIM FORE RELIEF
### (Misrepresentation- SPS)

38.     Plaintiff in an effort to mitigate his damages twice contacted Defendant to work out a requested from Defendant a reasonable time to move his property off the land. These requests were ignored. Instead another eviction notice was posted on the property. Defendant agents from SPS the servicing company twice contacted the Plaintiff ex parte to "talk about his moving". The so called re financing official with authority informed me that the defendant was not interested in giving plaintiff a new loan.

39.     The next day the eviction notice was posted. It turns out she was an eviction specialists with no apparent authority to work out a loan. Counsel complained about this to defendant and was assured there would be no further ex parte conduct. Then another ex parte contact was made and counsel complained about this and was told the woman who contacted plaintiff did not work for the defendant. This was not true. A woman who came to Plaintiff's house said she was with SPS the defendant's agent.

40.     On the other side of the equation, the Defendants will suffer no harm if they are enjoined from eviction or selling or attempting to sell the home.  Defendant had no right to foreclose on this property due to the rescission of the loan transaction. They also have no right to evict. The Public Trustee has no interest in this matter other than to properly carry out the laws entrusted to her administration, and therefore will suffer no injury if an injunction is granted.

### FOURTH CLAIM FOR RELIEF
### (MERS)

41.     The deed to this loan was sold or assigned to Mortgage Electronic Registration System, Inc. ("MERS") without notice to Mr. Melson or the Public Trustee. The bankers who sold the property to MERS have a duty to inform Mr. Melson and the Public Trustee of this transfer. Any transfer of the interest in the deed must be done with notice to homeowner and Trustee. Upon information and belief MERS bought and sold this property many time on the open stock market bundled as securities the lenders made up for security and to make a profit. MERS breached its duty to Mr. Melson both by doing these risky activities with his deed and not giving Mr. Melson notice.

42.     MERS is a registry service that keeps track of mortgage loans and loan servicers throughout the nation.  It is a database that registers transfers

of mortgages from lender to lender as they are bought and sold in the secondary market. MERS was founded by Countrywide Bank, Bank of America, Fannie Mae and Freddy Mac in an attempt to circumvent the requirement that successors in interest must be identified and recorded with the county in which the subject property is located.

43.     MERS is designated as a "nominee" for the lender. A nominee is a limited purpose agent with severely restricted authority to act on behalf of the principal – in this case the original lender Finance America, LLC. The ownership of the Deed of Trust (or mortgage) belongs to MERS. The lender is the owner (Beneficial Holder) of the Note while MERS is the owner of the Deed of Trust. The borrower makes payments to the lender or here HSBC, not to MERS.  The effect of this is that the lender does not own the Deed of Trust since it has been executed in the name of MERS.   That fact means that the lender can no longer foreclose on the Deed of Trust since the lender no longer owns it.

44.     MERS is not a Holder In Due Course, an assignee or the Beneficial Note Holder. MERS has no right, title or interest in the Note itself. They simply own the Deed of Trust but have no legal standing to collect on the Note since they have no right to collect payments under the Note. They cannot foreclose on the Deed of Trust because MERS has no rights to collect on the Note.

45.     The loan in this case has been assigned a Mortgage Identification Number and has been registered with MERS.  As such, MERS gains no legal standing to pursue foreclosure or to enforce any provisions of the Note and/or Deed of Trust.  The fact that this mortgage has been assigned a MERS/MIN number (100052300417455481) that may mean that this loan has been sold into the secondary market, usually more than once. The lender has bundled this loan with several others and has pledged that group of mortgages as backing (or securitization) for corporate bonds that the lender has also issued and sold into the secondary market.

46.     As such, the originating lender will no longer own the loan (Promissory Note) since the loan has been bundled and sold to some third party and the Deed of Trust belongs to MERS.

47.    If that is the case, the originating lender will no longer be the Beneficial Holder of the Note.  That means that the original lender does not have standing to enforce this contract or to enforce the *"Power of Sale"* clause in the Deed of Trust (Mortgage) by foreclosing. See <u>*MERS, Inc.  Vs. Southwest Homes of Arkansas*</u>  2009 ARK. LEXIS 458   and <u>*Landmark National Bank vs. Kesler, supra.*</u> The claim that MERS holds legal title and has the right to foreclose was soundly denied in both of these cases.

## BRIEF

The Court in the *Kessler* case, supra, treated this question as follows:

"*A deed of trust is a deed conveying title to real property to a trustee as security until the grantor repays the loan.  The trustee is limited in use of the title to passing title back to the grantor/borrower in the case of payment, or to the lender in the event of foreclosure.*"

The Deed of Trust, on its face, completely fails thereby to grant the right of foreclosure to any existing person, firm, official, company or other organization.

Second, the fact that MERS is not entitled to collect any payments or to otherwise act as the Note Holder defeats their attempts to foreclose on the Deed of Trust. MERS simply has no standing to foreclose.   In *MERS v. Southwest,* supra, the Supreme Court of Arkansas states:

"*MERS asserts that it held legal title to the property… The Deed of Trust indicates that MERS holds legal title and is the beneficiary, as well as the nominee of the lender. It further purports by contractual agreement with the borrower to grant MERS the power to "exercise any and all rights" of the lender, including the right of foreclosure.  However, the Deed of Trust provides that all payments are to be made to the lender, that the lender makes decisions on late payments and that all rights to foreclose are held by the lender.*

No payments on the underlying debt were ever made to MERS. MERS did not service the loan in any way.  It did not oversee payments, delinquency of payments, or administration of the loan in any way.  Instead, MERS asserts to be a corporation providing electronic tracking of ownership interests in residential real property security instruments."

Citing the 2006 New York case of *MERSCORP, Inc. vs. Romaine, 8 NY 3d 90, 861 NE 2d 81, 828 NYS 2d 266* the Court stated:

"*According to MERS, it was developed by the "real estate finance industry and was designed to facilitate the sale and resale of instruments in*

10

*"the secondary mortgage market, which include one of the government sponsored entities."*

> *MERS contracts with lenders to track security instruments in return for an annual fee... As discussed above, MERS is not designated to act on behalf of another under the facts of this case.  Further, it held no title in this case where title vested in the trustee, and finally, it received and distributed no funds for the benefit of others."*

After defining the meaning of the word "nominee" in this context and setting forth the fact that the deed of trust names some third party as the trustee the Court concluded:

> *The deed of trust did not convey title to MERS.  Further, MERS is not the beneficiary, even though it is so designated in the deed of trust.  Pulaski Mortgage, as the lender on the deed of trust was the beneficiary.  It receives payments on the debt.* In the case at bar precisely the same thing is true.

In the Kestler case, supra, the court, citing the Missouri case of *Bellistri v. Ocwan Loan Servicing* 284 SW 3d 619, 623 (MO. App. 2009) stated:

> *"The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note.  Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default.  The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation.  The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust. MERS never held the promissory note, thus its assignment of the deed of trust to Ocwan separate from the note had no force."*

In denying the validity of MERS as a necessary party in the action the Court ruled:

> *"MERS is not an economic beneficiary under the deed of trust.  It is owed and will collect no money from debtors under the note, nor will it realize the value of the property through foreclosure of the deed of trust in the event the note is not paid.  If MERS is only the mortgagee, without ownership of the mortgage instrument, it does not have an enforceable right."*

Finally, the Court addressed the underlying public policy issues that the entire MERS system creates.  That issue is the confusion and obfuscation in the minds of the public regarding who exactly, owns the notes and deeds of trust in the homes across the country. The court first stated that MERS has

attempted to circumvent the statutory recording system that has been in effect since the seventeenth century simply because it was "inconvenient" to record changes in ownership of a mortgage with the county recorders where the subject property may be located. In addressing the problems presented by the MERS system the court stated:

> *"One such problem is that having a single front man, or nominee, for various financial institutions makes it difficult for mortgagors and other institutions to determine the identity of the current note holder."*
>
> *The practice of various MERS members, including both the original lender and the mortgage purchaser, in obscuring from the public the actual ownership of a mortgage, thereby creating the opportunity for substantial abuses and prejudice to mortgagors...should not be permitted to insulate (the mortgage purchaser) from the consequences of its actions..."*

## CONCLUSION

47.     Since the mortgage does not exist in this case either under rescission or because MERS split the note and the deed it impossible for any bank here to foreclose or evict or continue to transfer the property. The property should be returned to Mr. Melson and he should be made whole and receive reasonable damages attorney fees and costs. The foreclosure was fatally flawed. The defendant still owns his home, and the parties seeking to evict are not the real party in interest because they only own an interest in the note, have taken payments for someone else and are charged with the duty to get the property back for their employers or partners.

48.     Mr. Melson is seeking as damages and asking for his down payment back, all his house payments made, statutory violations and the fines attached, interest at the legal rate, reasonable attorney fees and costs to prosecute this action including expert witness fees and associated litigation costs.

## DAMAGES

49.     The allegations set forth in Paragraphs 1 through 16 of this Complaint are restated and incorporated herein by this reference.

50.     Mr. Melson suffered actual damages due to the failure of Defendant, and its predecessors and agents in interest to properly disclose finance charges associated with the loan transaction, the imposition of closing costs and fees in connection with this improper loan transaction, and otherwise.

51.     TILA and state law further provide for the recovery of statutory damages for the violation of the disclosure requirements set forth therein, as well as for the failure to respond to a lawful notice of rescission.

52.     These damages may be set off against any amounts owed to the defendants regardless of the length of time between the closing of the loan transaction and this filing in court.

**WHEREFORE:** Mr. Melson requests that the Court issue a Preliminary and Permanent Injunction enjoining and restraining the Defendants from evicting Mr. Melson from his home or selling or attempting to sell Mr. Melson's home, and further mandating that Defendant withdraw all negative credit reports made with respect to this transaction, and take all other actions required under TILA and state law following the rescission of a loan transaction. Plaintiff seeks an award of damages and costs, including but not limited to witness and expert witness fees, attorney fees and costs, and such other and further relief as may be just under the circumstances.

Melson requests an award of damages in his favor and against Defendants for an amount determined at trial or by the   Court and an order setting off any damages awarded to plaintiff against any sum owed and proven by the Defendant, together with an award of costs, including but not limited to witness and expert witness fees, attorney fees and costs, and such other and further relief as may be just under the circumstances.

Plaintiff respectfully requests a jury trial.

Respectfully submitted this 19th day of March, 2010:

**Law Office of John W. Swanson**
*/s/ John W. Swanson*
_____
John W. Swanson
Attorney for Plaintiff

Original signature is in file at attorney's office.